Cynthia, Mary Lee, and Flora Ann **GEORGE**, et al., Plaintiffs-Appellants,

v.

**H. B. O'KELLY** et al., Defendants-Appellees.

No. 30404.

United States Court of Appeals, Fifth Circuit.

June 1, 1971.

Howard Moore, Jr., Peter E. Rindskopf, Atlanta, Ga., Jack Greenberg, Sylvia Drew, New York City, Elizabeth R. Rindskopf, Atlanta, Ga., Bobby L. Hill, Savannah Ga., for plaintiffs-appellants.

Arthur K. Bolton, Atty. Gen., A. Joseph Nardone, Jr., Asst. Atty. Gen., Atlanta, Ga., Homer S. Durden, Jr., Swainsboro, Ga., Alfred L. Evans, Jr., Asst. Atty. Gen., Harold N. Hill, Jr., Executive, Asst. Atty. Gen., Atlanta, Ga., for defendants-appellees.

Before WISDOM, Circuit Judge, DAVIS *, Judge, and GOLDBERG, Circuit Judge.

WISDOM, Circuit Judge:

This case deals with remedial education programs in a school system undergoing desegregation. Unfortunately, the plaintiffs have concentrated too much of their effort here on the improper past actions of the school board. The rights and wrongs of the specific past actions are no longer the subject of dispute. There is, however, still a live issue. That is the present and future operation of the remedial program. We remand the case to the district court for further consideration.

The public school system of Candler County, Georgia, is 58 percent white and 42 percent black. There are three schools in the system. Prior to the 1970–71 school year one of the schools was a twelve-year all-black school; one was an overwhelmingly white elementary school and one was an overwhelmingly white high school. During the winter of 1969–70, the school system was ordered to dismantle its segregated program and to cluster its three schools so that all children in each grade would be in the same school. Having agreed to comply with the court order, the school district became eligible for federal funds that had previously been cut off for noncompliance with the desegregated guidelines.

Under Title I of the Elementary and Secondary Education Act of 1965, 20 U.S.C. § 241a et seq., the school system was eligible for grants amounting to $120,000 for support of programs to meet "the special educational needs of educationally deprived children." In February 1970 the county school board decided not to apply for these funds. At the time of the decision the statute provided that, if the funds were not used by the county for a summer program, they would be redistributed to other counties in Georgia. The board's reasons for deciding to pass up the opportunity to use these funds are uncertain. The appellants alleged that it was simply because, under the board's incorrect understanding of the federal guidelines, only black children would benefit from a Title I-funded summer program.

Parents of black children sued in federal district court to require the board to apply for and make use of the funds to conduct a summer program. They contended that the board should be required to do this for two reasons: 1) the board's motive in refusing to apply for the funds was unconstitutional; 2) as part of its affirmative duty to dismantle the dual school system, the board had a duty to make use of the funds to provide remedial education to prepare black students for their first year in an integrated school system. The plaintiffs named as defendants the county school superintendent, the members of the county school board, and the state superintendent of schools.

The district court for the Northern District of Georgia, Atlanta Division, where the plaintiffs filed the action, transferred the case to the district court for the Southern District of Georgia. That court held a hearing June 10, 1970. By the time of the hearing, an important change had occurred in the law. Money not used by the county for a summer program would no longer immediately be redistributed to other counties. This money would now be available for the school board's use during the regular 1970–71 school year.

At the hearing the school superintendent explained the decision not to have a summer program with three reasons. First, still operating under a misimpression about restrictions on the composi-

---

* U. S. Court of Claims, Washington, D.C., sitting by designation.

tion of the summer program, the superintendent said the board had decided that it would be better to spend the money during the school year when it could benefit both black and white educationally deprived children than during the summer when it could be used only for black children. Second, he said that renovations required by the change of grade structure in the school buildings would prevent the use of the buildings for a summer program. Third, he said that the person who otherwise would run such a program would not be available during the summer.

The district court made no findings on the original motivation of the board in deciding not to have the summer program. Rather he viewed the controversy from the facts available at the time of the hearing, including the change that allowed the board to carry the funds over to the regular school year. The judge stated that the problem in the case was not whether to have a remedial program but only *when* to have it. This, he held, was an administrative rather than a constitutional question. And he found that the board's administrative decision was not unreasonable, arbitrary, or an abuse of discretion.

The summer of 1970 is beyond our power to recall. Any possible unconstitutional motivation for the decision not to have a summer program during 1970 is irrelevant now in determining injunctive relief with respect to a remedial program in the Candler County schools. According to the briefs of the appellees, the school system has used Title I funds to run a 1970–71 regular year remedial program and plans to run programs during the summer of 1971 and during the 1971–72 school year. Within the factual context now before us the original dispute is moot.

However we do not dismiss this case. During the hearing below and in argument before this Court, the plaintiffs-appellants suggested that black children were in greater need of remedial education because of a long history of inferior education and they raised questions as to whether the extensive testing conducted by the school board with Title I funds will be used to divide students into achievement tracks, which might result in the reestablishment of segregation within the school. *Cf.* Hobson v. Hansen, D.D.C.1967, 269 F.Supp. 401; Note, "Equality of Educational Opportunity: Are 'Compensatory Programs' Constitutionally Required?" 42 So.Calif.L.Rev. 146, 157 (1969). Also in the hearing below, the plaintiffs' expert witness suggested that insofar as the school board was spreading the Title I funds throughout the system rather than concentrating them on those students who are relatively more educationally deprived, the board was straying from the purpose of Title I.

On remand, the district court should hold a hearing on the operation and planning of the Candler County's Title I program. The court should consider whether achievement grouping or remedial programs during the regular school year result in racial segregation within the school. If so, the court should inquire whether this results from the county's provision of relatively inferior education to the black community in the past. If this should be the case the court should consider ways to achieve the remedial program without maintaining segregated classrooms. For instance, one way to do this would be to concentrate remedial programs during the summer. Also, if the court finds that black children have a lower educational achievement level because of inferior education to the black community in the past, it should consider whether the board's allocation of Title I funds comports with its duty to overcome any special educational deprivation of black children due to past discrimination. See Plaquemines Parish School Board v. United States, 5 Cir. 1969, 415 F.2d 817, 831; United States v. Jefferson County Board of Education, 5 Cir. 1966, 372 F.2d 836, 866, 893, aff'd en banc, 1967, 380 F.2d 385, 394. The purpose of Title I of the Elementary and Secondary Education Act of 1965 is congruent with the affirmative duty of the board to take appropriate action to

overcome any effects of past racial discrimination.

The judgment of the district court is vacated and this case is remanded to the district court for proceedings consistent with this opinion. The costs of appeal shall be divided equally between the parties.

McCree, Circuit Judge, concurred and filed opinion; Edwards, Circuit Judge, dissented and filed opinion.